IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 1 2 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

DALE ROY SLAVEN,                    §
                                    §
        Petitioner,                 §
                                    §
v.                                  §        No. 4:14-CV-810-A
                                    §
LORIE DAVIS, Director,[1]           §
Texas Department of Criminal        §
Justice, Correctional               §
Institutions Division,              §
                                    §
        Respondent.                 §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by petitioner, Dale Roy Slaven, a state

prisoner confined in the Correctional Institutions Division of

the Texas Department of Criminal Justice (TDCJ), against Lorie

Davis, director of TDCJ, respondent. After having considered the

pleadings, state court records, and relief sought by petitioner,

the court has concluded that the petition should be denied.

### I. Factual and Procedural History

On August 2, 2010, petitioner pleaded guilty to eight counts

of aggravated robbery, six counts of robbery, and one count of

---

[1]Lorie Davis has replaced William Stephens as director of the
Correctional Institutions Division of the Texas Department of Criminal
Justice. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Davis
is automatically substituted as the party of record.

forgery in Tarrant County, Texas.[2] All fifteen indictments also included a habitual-offender notice, to which petitioner pleaded true. (RR, Sentencing Hr'g, vol. 1 at 4.)  Following preparation of a presentence investigation report (PSI) and a sentencing hearing, the trial court sentenced petitioner to 60 years' confinement for each of the aggravated robbery offenses, 60 years' confinement for each of the robbery offenses, and 20 years' confinement for the forgery offense. (SHR 77,822-19 at 24-25.) Petitioner appealed his convictions and sentences, but the Second Court of Appeals of Texas affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused his petitions for discretionary review. Petitioner also filed postconviction state habeas applications challenging his convictions and sentences, which were denied by the Texas Court of Criminal Appeals without written order.

## II.   Issues

Generally, petitioner raises four grounds for relief: (1) he received ineffective assistance of counsel; (2) his guilty pleas were involuntary; (3) the state courts' decision was based on an

---

[2]Case Nos. 1178932D, 1179729D, 1179773D, 1179775D, 1180003D, 1180828D, 1180832D, 1180835D, 1180839D, 1180830D, 1180831D, 1180843D, 1181417D, 1183392D, and 1183501D. (State Habeas Record (hereinafter SHR) 77,822-19, at 24.)

unreasonable determination of the facts in light of the evidence;

and (4) the state courts' decision was contrary to, or involved

an unreasonable application of, clearly established law as

determined by the Supreme Court. (Pet. 6-7, 11-16.) Petitioner's

grounds are multifarious and are addressed below as thoroughly as

practicable.

### III.  Rule 5 Statement

Respondent believes that petitioner has exhausted his state

court remedies as to the claims raised and does not believe that

the petition is barred by limitations or subject to the

successive-petition bar. (Resp't's Answer at 6.) 28 U.S.C. §§

2244(b), (d) & 2254(b)(1).

### IV.  Discussion

### A.  Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened

standard of review provided for by the Anti-Terrorism and

Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the

Act, a writ of habeas corpus should be granted only if a state

court arrives at a decision that is contrary to or an

unreasonable application of clearly established federal law as

determined by the United States Supreme Court or that is based on

an unreasonable determination of the facts in light of the record

3

before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). It is the petitioner's burden to rebut the presumption of correctness. Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.

4

Crim. App. 1997). Under these circumstances, a federal court assumes that the state court applied the proper clearly established federal law to the facts of the case, express or implied, and then determines whether its decision was contrary to or objectively unreasonable application of that law. *See Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006); 28 U.S.C.A. § 2254(d)(1).

### (1) and (2) Ineffective Assistance of Counsel and Voluntariness of Petitioner's Guilty Pleas

Under his first and second grounds, petitioner claims that he received ineffective assistance of trial counsel and that his pleas were involuntary. (Pet. at 6, 11-12.)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To prevail on an ineffective assistance claim in the context of a guilty plea, a defendant must demonstrate that his plea was rendered unknowing or involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59

5

(1985); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). In assessing the reasonableness of counsel's representation, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011) (quoting *Strickland,* 466 U.S. at 690).

Further, by entering a knowing, intelligent and voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings preceding the plea, including all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith*, 711 F.2d at 682; *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). A guilty plea is knowing, voluntary and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing, voluntary and intelligent, it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).

Petitioner's claims of ineffective assistance of trial counsel are construed as follows: Counsel was ineffective by-

(a)  failing to investigate and present expert witness

6

testimony at sentencing regarding his extensive
history of "mental health and medical issues,"
including "chemical dependency/substance abuse
issues," that affect his culpability and would
have supported a voluntary intoxication defense
and significantly reduced his sentences;

(b)  giving him "misleading" advice to enter open
     guilty pleas and turn down the state's 40-year
     offers in light of the severity of his cases and
     his criminal history;

(c)  failing to visit and confer with him in jail and
     to respond to his letters;

(d)  failing to investigate and disqualify void
     convictions used to enhance his range of
     punishment;

(e)  coercing him to forgo the state's 40-year plea
     offers and waive his right to a trial by jury;

(f)  failing to correct the factually erroneous PSI and
     to consult with him regarding the report; and

(g)  failing to conduct a basic, preliminary
     investigation instead of relying on the PSI, the
     state's discovery file and his and his mother's
     testimony at sentencing.

(Pet. at 6-7, 11-12.)

During the state habeas proceedings, trial counsel, John

Fritz, responded to petitioner's claims via affidavit as follows:

(1)  I never advised Mr. Slaven to reject the State's
     plea offer.

(2)  I explained the effect his pleas of true to the
     enhancement and deadly weapon allegations would
     have on his potential sentence and any parole
     eligibility. I made no representations regarding

whether or when he would actually be granted
parole.

(3)   I spoke with Mr. Slaven on several occasions prior
to trial, and I discussed the circumstances of his
cases, the State's offers and general position
with regard to his cases, and his rights,
protections, and options concerning his cases.

(4)   Mr. Slaven expressed to me that he understood his
pleas and that he was entering them freely and
voluntarily, sentiments he repeated on the record
in open court.

(SHR, 77,822-19, at 34-35.)

Under claims (b) and (e), above, and petitioner's second

ground, he claims that his guilty pleas were based on the

"misleading" advice of counsel to turn down the 40-year plea

offers, were coerced by counsel who was aware that he was on

"psychotropic" medication that rendered him "docile, compliant

and susceptible to coercion," and at the time he entered his

pleas he was suffering from "mental health issues and medical

issues causing defisient [sic] mental competency." (Pet. at 6,

11.) These claims go to the knowing and voluntary nature of

petitioner's guilty pleas and pleas of true to the enhancements.

Applying *Brady, supra,* and relevant state law, the state

appellate court addressed these claims as follows:

Appellant . . . asserts that his guilty pleas were
involuntary. A guilty plea must be knowingly and
voluntarily made or it will be held constitutionally

8

invalid. A record reflecting that a defendant was properly admonished presents a prima facie showing that the guilty plea was entered knowingly and voluntarily.

Here, Appellant signed written plea admonishments, each of which states that he entered his plea knowingly and voluntarily and that he was aware of the consequences of his guilty plea. Appellant signed judicial confessions in each case. In person and in open court Appellant pleaded guilty to all fifteen charges, and he affirmed that he was pleading guilty because he was guilty. Although the record presents a prima facie showing that Appellant knowingly and voluntarily entered his pleas, Appellant asserts that his pleas were obtained through coercion and intimidation and were therefore involuntary. Appellant's specific complaint is that he was not aware that the State's forty-year offer was available when he entered open pleas of guilty (with no punishment recommendations). At Appellant's plea hearing, however, the trial court specifically advised Appellant that "[t]here are no plea agreements. It is an open plea. The State is not making you any offer on this." Likewise, Appellant's counsel elicited the following testimony from Appellant:

> Q. [Defense Counsel]: And you have already been admonished on a previous occasion that there was a plea bargain offer made in this case that you rejected?
>
> A. [Appellant]: Yes, sir.
>
> Q. And by entering an open plea today, as the Judge said, you have no guarantee that you are going to do any better and there is a possibility that you could do considerably worse?
>
> A. Yes, sir, I understand.
>
> Q. At any point during this process, has—do you feel like there has been any miscommunication between you and I regarding

9

this process, your right to a trial, and what
would be the prudent way for you [to] proceed?

A. No, I haven't.

Additionally, Appellant raised, and the trial
court addressed, this issue at the abatement hearing.
The trial court entered the following related findings
and conclusions afterward:

> The defendant contends his trial counsel
> failed to notify the defendant of a plea
> offer of 40 years that was made by the State
> at the August 2, 2010, plea hearing. No such
> plea offer was made by the State on August 2,
> 2010. Instead, the State's previous plea
> offer of [a] 40 year sentence[ ] had expired
> in May of 2010. The plea paperwork used [i]n
> connection with the defendant's August 2,
> 2010, plea does have the number "40"
> scratched out. However, this reflects the
> parties' decision to "recycle" previously
> completed (and unused) paperwork. The
> deletion of the number "40" from the plea
> paperwork was not intended by the State to
> reflect a plea offer of 40 years'
> imprisonment being made available to the
> defendant on August 2, 2010.

Thus, Appellant's complaint regarding this issue has no
arguable merit.

Appellant additionally asserts that his pleas were
involuntary because "his mental compet[e]nce to enter
the plea[s] [was] questionable." Appellant asserts (and
the PSI indicates) that Appellant has previously been
diagnosed with mood disorder, schizophrenia, anti-
social personality disorder, depressive disorder, and
cocaine dependence. Appellant asserts that it is clear
from the record that he has a long history of
psychiatric issues as well as several instances of
severe head trauma.

10

A person is incompetent to stand trial if the
person does not have sufficient present ability to
consult with his lawyer with a reasonable degree of
rational understanding or a rational as well as factual
understanding of the proceedings against him. A court
must conduct a competency inquiry only if there is a
bona fide doubt in the judge's mind as to the
defendant's competence. A bona fide doubt may exist if
the defendant exhibits truly bizarre behavior or has a
recent history of severe mental illness or at least
moderate mental retardation.

Here, Appellant and his counsel both answered
affirmatively that Appellant was competent to enter his
guilty pleas. When the trial court stated its
understanding that "there were some MHMR issues
involved," Appellant stated that he was on his
medication and that he understood all of the
circumstances concerning these pleas. Based on his
observations and Appellant's and counsel's answers, the
trial court found Appellant competent to enter his
guilty pleas. At the punishment hearing, Appellant
addressed the court and asked for leniency in a four-
page colloquy in the reporter's record.

Appellant's mental health diagnoses would
implicate his competence at the time of his guilty
pleas only if they impacted his present ability to
consult with his counsel with a reasonable degree of
rational understanding and his rational and factual
understanding of the proceedings against him. We find
nothing in the record that would raise a bona fide
doubt as to Appellant's competence at the time of his
guilty pleas.

(Mem. Op. at 7-10 (citations omitted).)

Having reviewed the record in its entirety, the state

court's adjudication of the claims comports with Supreme Court

precedent and is reasonable given the evidence before the court.

There is no credible evidence that counsel advised petitioner to reject the state's plea offers or that counsel improperly advised petitioner regarding his rights, waivers, and the consequences of his pleas. Nor is there evidence that petitioner was coerced by counsel in some way or that petitioner was incompetent to enter his pleas. Instead, the record reflects that the trial court was aware that petitioner was on medication for some "MHMR issues" at the time of his pleas; that petitioner was "medication compliant" and understood all the circumstances concerning his pleas; that his pleas were made knowingly, freely, and voluntarily; that petitioner was competent to enter his pleas; and that counsel had not suggested, threatened or promised him anything in order to get him to plead guilty. (RR, Plea Hr'g, vol. 1 at 7-8, 12.) Petitioner also executed the written plea admonishments in which he acknowledged that he was mentally competent, that his pleas were knowingly, freely, and voluntarily entered, and that no one had threatened, coerced, forced, persuaded or promised him anything in exchange for his pleas. (SHR, 77,822-19, at 83-87.) Petitioner's representations during the plea proceedings "carry a strong presumption of verity," and the official records, signed by petitioner, his counsel and the state trial judge are entitled to a presumption of regularity and are accorded great evidentiary

12

value. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974). The mere fact that petitioner was on medication is insufficient to rebut the presumption that counsel adequately advised petitioner and that petitioner was competent to enter his pleas and did so knowingly, freely and voluntarily with the understanding of the consequences. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). Petitinoer's self-serving assertions, after the fact, are in and of themselves insufficient. *See Siao-Pao v. Keane,* 878 F. Supp. 468, 472 (S.D.N.Y. 1995). *See also, e.g., Panuccio v. Kelly,* 927 F.2d 106, 109 (2d Cir. 1991) (a defendant's testimony after the fact suffers from obvious credibility problems).

Counsel's obligation is to inform a criminal defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo. *Libretti v. United States,* 516 U.S. 29, 50-51 (1995). Often a criminal defendant, even if he is unwilling or unable to admit his guilt, will agree to plead guilty to an offense, having been so informed by counsel, in order to avoid a

13

potentially longer sentence by a jury. Such a decision on the part of a defendant does not render counsel's representation deficient or a plea involuntary. *See North Carolina v. Alford,* 400 U.S. 25, 37 (1970); *Brady v. United States,* 397 U.S. 742, 749-50 (1970).

To the court's knowledge the Supreme Court has not addressed the voluntariness of pleas of true. However, under Fifth Circuit case law, a court considers the "totality of the circumstances" to determine whether a plea of true to an enchantment paragraph was voluntary and intelligent. *Holloway v. Lynaugh,* 838 F.2d 792, 793-94 (5th Cir.), *cert. denied,* 488 U.S. 838 (1988). By pleading true to enhancement paragraphs, a defendant concedes that he in fact has prior convictions that can be used to enhance his sentence on the current conviction. *Id.* at 793. He also waives any complaints about the validity of the prior convictions. *Id.;* *Johnson v. Puckett,* 930 F.2d 445, 449-50 (5th Cir. 1991); *Zales v. Henderson,* 433 F.2d 20, 24 (5th Cir. 1970).

Therefore, by entering pleas of true to the enhancement paragraph in each indictment, petitioner waived his right to challenge the validity of the prior convictions alleged therein if his pleas were voluntary and intelligent. Counsel avers in his affidavit that he explained the effect of petitioner's pleas of

14

true to the enhancement and deadly weapon allegations would have on his potential sentences and any parole eligibility. (7th Supp. SHR, 77,822-19 at 34-35.) The record also reflects that the trial court explained the effect of a plea of true to the habitual-offender paragraph in the indictments during the plea hearing. (RR, Plea Hr'g, vol. 1 at 5, 9.) Based on the totality of the circumstances, petitioner's pleas of true to the enhancement were intelligent and voluntary.

Therefore, given petitioner's voluntary and knowing guilty pleas and pleas of true, his ineffective-assistance claims (c) and (d) are waived.

Under claims (a) and (g), petitioner asserts counsel was ineffective by failing to investigate and present expert witness testimony to support a voluntary intoxication defense during the sentencing hearing. (Pet. at 11-12.) Specifically, he asserts that he

> requested that counsel develope [sic] his MHMR/mental health history of head trauma and his extreme chemical dependency/substance abuse issues and present them towards volutary [sic] intoxication as a defence [sic]/mitigation of punishment.

(*Id.* at 11.)

Under state law, voluntary intoxication does not constitute a "defense to the commission of crime." *See* TEX. PENAL CODE ANN. §

15

8.04(a) (West 2011). However, temporary insanity caused by intoxication may be presented by a defendant in mitigation of punishment. *Id.* § 8.04(b). Although the record in this case is silent as to the nature and extent of counsel's investigation into these matters, the PSI apparently provided details of petitioner's mental health issues and lengthy history of substance abuse.[3] Further, petitinoer was permitted to give a "freeform" statement at the sentencing hearing during which he discussed these matters. Petitioner presents no evidence indicating that additional investigation by counsel would have yielded evidence that would have resulted in significantly lower sentences. To prevail on a failure-to-investigate claim, a petitioner must allege with specificity what a more thorough investigation would have revealed and how it would have benefitted him. *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989). Petitioner presents nothing to indicate that the outcome of his trial would have been different had additional evidence of his mental health and substance abuse been introduced. Moreover, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of

---

[3]The PSI is not included in the state court records.

16

what the witness would have testified are largely speculative."
*Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2000). This court
will not assume that witnesses, from whom no affidavits are
presented, would have testified favorably for the defense. The
trial court was aware of petitioner's difficult childhood, "MHMR
issues" and substance abuse as stated in the PSI report and
testified to by petitioner and his mother and appears to have
given petitioner's "life" consideration in determining his
sentences. (RR, Sentencing Hr'g, at 56.)

Finally, under (f), petitioner asserts that counsel was
ineffective by failing to correct unspecified factual errors in
the PSI report. (Pet. at 12.) On direct appeal, petitioner
claimed the PSI report inaccurately recited that he was
affiliated with the Aryan Brotherhood in prison and that he
suffered a head injury in 1990 rather than 2006. The state
appellate court, relying solely on state law, addressed the claim
as follows:

> Appellant . . . contends that the presentence
> investigation report was not conducted thoroughly or
> accurately and led to a significantly higher sentence.
> Appellant contends that the PSI was inaccurate in
> reciting that he acknowledged "affiliation" with the
> Aryan Brotherhood while inside prison. He also contends
> that the PSI misreported that he sustained a head
> injury in 1990, when he actually sustained it in 2006,
> and that the proximity in time of his injury to his

2009 crimes may have had some mitigating influence on his sentencing. Appellant contends that he was not allowed adequate access to the PSI, nor time to consult with his counsel to formulate an objection to the incorrect information. He contends that if he had been given adequate time and assistance of counsel, the trial court would have given him a lesser sentence.

"Unless waived by the defendant, at least 48 hours before sentencing a defendant, the judge shall permit the defendant or his counsel to read the presentence report." "The judge shall allow the defendant or his attorney to comment on a presentence investigation . . . and, with the approval of the judge, introduce testimony or other information alleging a factual inaccuracy in the investigation or report."

At the conclusion of Appellant's guilty pleas, the trial court stated, "We are going to have the presentence investigation report prepared as expediently as possible. After I receive a copy of it, I'll have your lawyer to have a copy of it and the State have a copy of it and I'll bring you back so he can review it with you and I'll hear any punishment evidence that he wishes to present." At the punishment hearing, the State asked the trial court to admit a copy of the PSI into the record for all purposes, Appellant's counsel stated that he had no objection, and the trial court entered the exhibit. Appellant contends that his counsel "may have had adequate time to review" the PSI, but that he (Appellant) "was not given this opportunity" and that "the short amount of time he was allowed," he was without counsel. We note that Appellant's complaint that he did not have sufficient time to review the PSI is forfeited because it was not made to the trial court by a timely objection. Even disregarding forfeiture, however, this complaint lacks arguable merit.

Regarding Appellant's complaint that the trial court's sentencing was based on inaccurate information in his PSI, the defendant bears the burden to point out any material inaccuracy in the PSI to the trial court

at the time of the sentencing hearing. The appellant
bears the burden on appeal of showing that the trial
court relied on inaccurate information in determining
his sentence. Although Appellant's counsel did not
object on the record to inaccuracies in the PSI (and in
fact stated he had no objection to it being introduced
as an exhibit), Appellant asserts that he preserved
error on this issue by telling the trial court at the
sentencing hearing that, "I have hung out, yes, with
Aryan Brotherhood. I have never joined. I've hung out
with them because in prison, when you're a 17- or
18-year-old kid out of the suburbs on a prison unit
like B21 in the '80s, you ain't got no choice. I
signed. I'm not say[ing] that's an excuse for what I
did when I got out. Okay. But I did what I had to
survive in there." Appellant also stated, "I'm not a
racist. I don't want that to figure in your decision."
Contrary to Appellant's argument, his testimony
establishes the accuracy of the PSI; that is, that he
affiliated with the Aryan Brotherhood while in prison.
In any event, the record demonstrates that Appellant
was not harmed by any alleged inaccuracies about his
affiliation with the Aryan Brotherhood while in prison.
Indeed, the trial court stated to Appellant at the
sentencing hearing, "[Y]ou brought up the fact that
while you were in the penitentiary, you associated
yourself with the Aryan Brotherhood and you didn't want
me to take that into consideration, and I don't. All I
take into consideration [are] the crime[s]. . . . ."

Regarding Appellant's argument that the PSI
incorrectly stated that he sustained a head injury in
1990 rather than in 2006, he forfeited this complaint
because he failed to alert the trial court to the
alleged inaccuracy. Even disregarding forfeiture,
however, there is no indication that the trial court
would have given Appellant a lesser sentence if the PSI
had stated that Appellant sustained the head injury in
2006. Indeed, the PSI states that there appears to be a
direct correlation between his criminal activity and
substance abuse. Likewise, in testifying in the
punishment phase about his culpability in the 2009
crimes, Appellant did not assert that a 2006 head

injury mitigated his culpability; instead, he
testified, "I have got a drug addiction. . . . And when
I was out there doing what I was doing, I was so far
strung out and in my drugs." Further, in assessing
Appellant's punishment, the trial court emphasized that
Appellant's use of drugs while committing his offenses
was "frightening" because "[i]f you're on drugs you
know what you're doing, but you don't care what you're
doing because drugs take over." In fact, the trial
court explicitly explained the basis for the sentences
imposed: "All I take into consideration is the crime
itself, the pain and suffering that it's caused the
victims, because the victims are as important as the
person who is standing up here to be sentenced. I have
to take their lives into consideration just like I take
your life into consideration." Thus, the record
demonstrates that the alleged inaccuracies did not harm
Appellant because the trial court did not consider
them.

(Mem. Op. at 10-14 (citations omitted).)

The state court's adjudication of the claims is neither

contrary to or an unreasonable application of clearly established

Supreme Court precedent nor it is based on an unreasonable

determination of the facts in light of the record before the

state court. Even if petitioner could show that counsel was

deficient for not objecting to the alleged inaccuracies in the

PSI, which he has not, he fails to demonstrate that but for this

omission a reasonable probability exists that his sentences would

have been significantly less harsh given the nature and extent of

the underlying offenses and petitioner's extensive criminal

history.[4] *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir. 1993).
Petitioner is not entitled to relief under grounds one and two.

### (3) and (4) State Habeas Court Proceedings

Under his third and fourth grounds, petitioner claims he was
denied a full and fair opportunity to develop the facts in the
state courts and that the trial court's factual findings, as
proposed by the state, are based on an unreasonable determination
of the facts in light of the evidence. (Pet. at 7, 13-15.)
Specifically, petitioner complains that counsel's affidavit is
vague and ambiguous; that the trial court's findings contradict
counsel's affidavit and are not otherwise supported by the
record; that petitioner was unable through no fault of his own to
develop the facts; that the state court "infers all forms of
professionalism and sufficient representation from counsel" where
there is nothing to support such inferences; and that the finding
that petitioner lied in his pleadings is patently false. Clearly,
certain inconsistencies in the state habeas court's factual
findings and counsel's affidavit exist. However, the Texas Court
of Criminal Appeals did not adopt the findings, likely due to

---

[4]TDCJ's website reflects that prior to the instant offenses, petitioner
had eight prior felony convictions in Tarrant County, Texas. TDCJ's Offender
Information Details, *available at* http://www.tdcj.state.tx.us/offender_
information.

those inconsistencies, in denying petitioner's state habeas

applications. As previously noted, under such circumstances, the

Texas Court of Criminal Appeals presumably applied correct

standards of federal law and made findings consistent with its

decision. The Supreme Court has established that a state court's

failure to make explicit findings of fact does not affect the

deference a court must accord the state court's determination.

*See Harrington,* 562 U.S. at 9 ("[D]etermining whether a state

court's decision resulted from an unreasonable legal or factual

conclusion does not require that there be an opinion from the

state court explaining the state court's reasoning." (citations

omitted)). See also *Amos v. Thornton,* 646 F.3d 199, 205 (5th Cir.

2011) (per curiam) (finding that deference to the state court is

not diminished when the state court "did not explain the reasons

for its determination"). This is so even if the state court

proceedings may not have been full and fair. *Valdez v. Cockrell,*

274 F.3d 941, 950-51 (5th Cir. 2001) (providing to require "a

full and fair hearing requirement that would displace the

application of § 2254(e)(1)'s presumption would have the

untenable result of rendering" the statute a nullity), *cert.*

*denied,* 537 U.S. 883 (2002). Furthermore, alleged defects in a

state habeas proceeding are not cognizable under federal habeas

review. *Rudd v. Johnson,* 256 F.3d 317, 319-20 (5th Cir. 2001); *Trevino v. Johnson,* 168 F.3d 173, 180 (5th Cir. 1999). Petitinoer is not entitled to relief under his third and fourth grounds.

### V. Conclusion

In summary, petitioner has failed to satisfy his burden by showing that the state courts' rejection of his claims involved an unreasonable determination of the facts or an unreasonable application of federal law as determined by the Supreme Court.

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED September ___12___, 2016.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE